UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                    :

PENNY FERN HART,                 :     Civil Action No.:

          Plaintiff,                   :

      - against –                    :     **VERIFIED COMPLAINT**

                                      :

VEDDER PRICE P.C.,          :     Jury Trial Demanded

          Defendant.             :

------------------------------------------------------------ X

### Nature of the Action

1.      This is an action for legal malpractice, arising out of Defendant's negligent provision of legal services to Plaintiff Penny Hart ("Hart").

2.      As described herein, Plaintiff retained Defendant Vedder Price P.C. ("Vedder"), to recover on a roughly $1,000,000.00 loan and associated personal guarantees Hart had purchased from TD Bank, N.A. (the "Soupman Loan"). The Vedder shareholder who handled Hart's matter was Michael Schein ("Schein").

3.      Hart's original causes of action on the Soupman Loan accrued in April 2008, upon Soupman's default. In 2009, Plaintiff commenced her litigation against Guarantors by way of motion for summary judgment in lieu of complaint. After a needlessly long saga that included Defendant's failure to make key arguments in support of Plaintiff's motion, failure to appeal from the erroneous denial of that motion, Guarantors' removal of her claims to federal court to be adjudicated before the Bankruptcy Court handling Soupman's bankruptcy, and the introduction of counterclaims against Hart arising out of her alleged conduct as a Director of Soupman, Schein advised Hart to settle the counterclaims with Soupman's bankruptcy trustee by,

*inter alia*, reducing and subordinating her secured claim on the Soupman Loan in the bankruptcy, and dismissing her claims against Guarantors without prejudice.

4.      Though the settlement was finalized in February, 2014 – just a month and a half before the statute of limitations on Hart's claims against the Guarantors would run – Defendant did not advise Hart that she would need to immediately refile her claims against the Guarantors if she wanted to preserve them from expiring.

5.      To the contrary, Defendant advised Hart that she would be able to refile the claims at her leisure.

6.      Consistent with that advice, Hart's and Vedder's plan was to refile the claims against the Guarantors after the bankruptcy proceeding closed, so that her claims on the guarantees would not again be removed to federal court.

7.      Defendant continued to represent Hart in connection with the Soupman bankruptcy, and particularly with respect to her claim in bankruptcy arising out of the Soupman Loan, until the bankruptcy closed on May 29, 2015.

8.      At no point in that continuous representation did Defendant advise Hart that she had to refile her claims on the guarantees by April 15, 2014 or such claims would be barred by the statute of limitations – because, as discussed below, Defendant negligently failed to recognize that the statute of limitations would be an issue at all.

9.      As detailed below, Hart has suffered millions of dollars in damages as a result of Defendant's errors, omissions, failures to advise, and affirmatively incorrect advice.  As such, she now brings this claim for legal malpractice against Defendants.

## The Parties

10.     Plaintiff Hart is a citizen of New York residing at residing at 200 East End Avenue, Apartment 12P, New York, New York.

11.     Vedder is an Illinois corporation whose principal place of business is located at 222 N. LaSalle Blvd., Chicago, Illinois 60601.  It maintains a New York office located at 1633 Broadway, New York, New York 10019, from which the services at issue in this action were provided.

## Jurisdiction and Venue

12.     Jurisdiction is proper under 28 U.S.C. § 1332(a)(1), in that the action is between citizens of different states and the amount in controversy is greater than $75,000.

13.     Venue is proper under 28 U.S.C. 1391(b)(2), in that the acts and omissions giving rise to Plaintiff's claims occurred in this District, and particularly at Defendant's New York offices, which are and at all relevant times were located in this District.

## The Soupman Loan and Guarantees

14.     Soupman's business was the sale of soups under the "SOUPMAN" trademark, which it licensed from Al Yeganeh (on whom the famous "Soup Nazi" Seinfeld character was based).

15.     In 2007, Soupman obtained the Soupman Loan – $1,000,000 in secured financing from Commerce Bank, N.A., evidenced by a Loan and Security Agreement and Revolving Term Note, each dated April 11, 2007.

16.     In connection with the Soupman Loan, Guarantors issued unconditional guarantees (the "Guarantees") in the aggregate amount of $1,020,000.00.

17.     Soupman failed to pay the Soupman Loan when it became due, on April 15, 2008.

18.     On June 11, 2008, TD Bank (as successor-in-interest to Commerce Bank) assigned the Soupman Loan and Guarantees to Plaintiff.

19.     Though Hart made demand on Guarantors, they did not pay as required by the Guarantees.

## The Prior Litigation

20.     On September 21, 2009 – roughly 17 months after the underlying default – Hart moved to recover on the Guarantees by motion for summary judgment in lieu of Complaint. *Hart v. Bello*, 0602358/2009 (N.Y. County) (the "First Hart Action").

21.     Guarantors opposed, arguing that because Soupman had described Hart's purchase of the loan as a "payoff" of the loan in a letter to shareholders there was a factual issue as to whether the underlying loan had been truly assigned to Hart, and that they had derivative claims on behalf of Soupman that could be asserted as a setoff.

22.     Though the Guarantees expressly recited that the lender's books and records would be "binding upon the Guarantor[s] for the purpose of establishing the items therein" and in fact "constitute conclusive proof thereof," Defendant did not raise that language to the trial court as a basis for rejecting Guarantors' arguments that the loan had been paid off.

23.     On June 2, 2010, the Supreme Court, New York County (Fried, J.), denied Hart's motion for summary judgment on the basis that the shareholder letter raised issues of fact.

24.     Defendant did not appeal the denial of summary judgment.

25.     On October 26, 2010, Guarantors filed an answer, counterclaims, and third-party complaint in which they asserted a number of purported derivative claims against Hart on behalf of Soupman.

26.     On November 24, 2010, Guarantors removed the First Hart Action to the Federal Court for the Eastern District of New York, where the Soupman bankruptcy was pending.

4

27.     Over the next four-plus years, Hart paid Vedder hundreds of thousands of dollars to litigate her claims and the claims and defenses raised by the Guarantors, which the Soupman Trustee had taken over, to defend against a separate adversary proceeding brought by the Trustee based on similar allegations that Hart had breached her fiduciary duty, and to press her claim for repayment of the Soupman Loan in the Soupman bankruptcy proceeding.

### The Bankruptcy Settlement

28.     After a mediation held in the Spring of 2013, and on Defendant's advice, Hart agreed to settle with the Soupman Trustee.

29.     The settlement included the following terms: (a) within five business days of an order approving the settlement, (i) Hart would withdraw her claims against Guarantors, without prejudice; (ii) the derivative claims brought by the Guarantors, and the claims brought by the Trustee, would be dismissed with prejudice; and (iii) Guarantors' contingent claims (asserting a right to repayment from Soupman if they were found liable on the Guarantees) would be dismissed without prejudice; (b) other parties (but not Hart) would pay a total of $1,325,000 to Soupman; (c) a related entity, Park 100, would withdraw certain claims; and (d) Hart would consent to the subordination – but not waiver, modification, or release – of her claims relating to loans to Soupman, including the Soupman Loan.

30.     By that point, the outstanding amount due on the Soupman Loan, together with another loan of roughly $540,000 that Hart had made to Soupman, was over $2,000,000.00.

31.     Hart agreed to the settlement after being advised by Defendant that she would be able to refile her claims against Guarantors.

32.     Defendant specifically advised Hart that she would be able to refile such claims at any time.

33.     Defendant specifically advised Hart that a significant advantage of the settlement was that, after the bankruptcy was over, she would be able to pursue her claims against the Guarantors in New York State court.

34.     In fact, the settlement was worded specifically to prevent any argument that Hart had impaired her ability to seek recovery from the Guarantors by agreeing to subordinate her claims against Soupman.

35.     Upon information and belief, Defendant understood that Hart planned to refile the claims against the Guarantors after the bankruptcy had closed.

36.     Hart expected that Defendant would file such an action on her behalf at the appropriate time.

37.     Upon information and belief, Defendant expected that they would represent Hart in such an action when it came time to file it.

38.     At no point in time did Defendant advise Hart that her claims on the Guarantees would become time-barred if not refiled prior to April 16, 2014.

39.     At no point in time did Defendant advise Hart that her claims on the Guarantees would or could *ever* be time-barred.

40.     To the contrary, Defendant expressly reassured Hart that she would be able to refile he claims against the Guarantors at any time she chose.

41.     Upon information and belief, Defendant did not realize that Hart's claims against Guarantors would be time barred as of April 16, 2014.

42.     Upon information and belief, Defendant were under the mistaken impression that no statute of limitations applied to the Guarantees.

6

43.     Hart agreed to the terms of the settlement specifically because of Defendant's advice that she would be able to recover against Guarantors in a later action against them, filed after the close of the bankruptcy.

44.     Indeed, Defendant advised Hart that one of the key benefits to her of the settlement was that it effectively disposed of any and all of the defenses and arguments Guarantors had raised in opposing her recovery on the Guarantees.

45.     In fact, Guarantors filed an opposition to the Trustee's motion to approve the settlement, arguing that the settlement harmed them by eliminating their defenses to Hart's claims on the Guarantees.

46.     Upon information and belief, Defendant was aware that Hart agreed to the settlement in reliance on Defendant's assurances that she could refile the claims against the Guarantors and the ability to pursue such claims after the close of the bankruptcy proceeding without concern for removal to federal court or the defenses and counterclaims Guarantors had asserted in the First Hart Action.

47.     The Bankruptcy Court issued its order approving the settlement on February 28, 2014.

48.     At that point, Hart had roughly 45 days to file her claims against Guarantors before the statute of limitations would run.

49.     Despite that, Defendant did not advise Hart of the impending deadline.

50.     Defendant continued to represent Hart in connection with the Soupman Loan and bankruptcy until the bankruptcy terminated on or about May 29, 2015.

51.     Hart's claims against the Guarantors, the Soupman Loan, and the Soupman bankruptcy were interrelated, as they arose out of the same transactions and conduct, and involved overlapping parties.

52.     Because Defendant was aware of – and in fact had developed – the strategy of waiting until the close of the bankruptcy to refile the claims against the Guarantors, its representation of Hart in the bankruptcy was intertwined with its representation of Hart in connection with the claims against the Guarantors.

53.     At no point in that representation did Defendant advise Hart that the statute of limitations on her claims against the Guarantors had expired.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Legal Malpractice)

54.     Plaintiff repeats and realleges the facts set forth in Paragraphs 1-53 above as though more fully set forth herein.

55.     Defendant's failure to advise Hart at the time of the settlement that the statute of limitations on her claims against the Guarantors would run as of April 2014 constitutes legal malpractice.

56.     No reasonable attorney, reviewing the proposed settlement and exercising the degree of skill commonly exercised by an ordinary member of the legal community, could have advised Hart to dismiss her claims against the Guarantors without expressly notifying her of the date by which she would need to refile those claims in order to avoid having them barred by the statute of limitations.

57.     No reasonable attorney, reviewing the Guarantees, could have concluded that no statute of limitations applied to claims for recovery under the Guarantees.

58.     Defendant's continued representation of Hart in connection with the Soupman Loan and bankruptcy was so integrally related to her claims on the Guarantees that she was entitled to repose her trust and confidence in Defendant's representation such that the statute of limitations on her malpractice claim was tolled until that representation terminated, on or after May 29, 2015.

59.     By virtue of Defendants' failure to advise, Hart has been damaged in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Legal Malpractice)

60.     Plaintiff repeats and realleges the facts set forth in Paragraphs 1-59 above as though more fully set forth herein.

61.     Defendant's failure to advise Hart at the time the settlement was approved that the statute of limitations on her claims against the Guarantors would run as of April 2014 constitutes legal malpractice.

62.     No reasonable attorney, exercising the degree of skill commonly exercised by an ordinary member of the legal community, could have failed to advise Hart, upon the dismissal without prejudice of her claims in March 2014, that she would need to refile those claims by April 16, 2014 in order to avoid having them barred by the statute of limitations.

63.     No reasonable attorney, reviewing the Guarantees, could have concluded that no statute of limitations applied to claims for recovery under the Guarantees.

64.     Moreover, by incompletely advising Hart that she could refile the claims without specifying the date on which the statute of limitations would bar such refiling, Defendant created an affirmative duty to inform Hart of the impending statute of limitations on each and every day that it represented her in advance of the statute of limitations running.

65.     Defendant's failure to so advise Hart, or to correct its incomplete advice was malpractice.

66.     By virtue of Defendant's malpractice, Hart has been damaged in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Legal Malpractice)

67.     Plaintiff repeats and realleges the facts set forth in Paragraphs 1-66 above as though more fully set forth herein.

68.     Defendant's failure to refile Hart's claims against the Guarantors before the statute of limitations ran constitutes legal malpractice.

69.     No reasonable attorney, exercising the degree of skill commonly exercised by an ordinary member of the legal community, upon the dismissal without prejudice of Hart's claims in March 2014 and aware of her desire to refile such claims and recover on the Guarantees, could have failed to refile Hart's claims against the Guarantors in advance of the expiration of the statute of limitations.

70.     No reasonable attorney, reviewing the Guarantees, could have concluded that no statute of limitations applied to claims for recovery under the Guarantees.

71.     Defendant's failure to refile Hart's claims against the Guarantors was malpractice.

72.     By virtue of Defendant's malpractice, Hart has been damaged in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Legal Malpractice or Breach of Fiduciary Duty)

73.     Plaintiff repeats and realleges the facts set forth in Paragraphs 1-72 above as though more fully set forth herein.

74.     Once the statute of limitations on the Guarantee claims ran, Defendant was under an affirmative duty to disclose its malpractice to Hart on each and every day that Defendant represented her.

75.     To the extent that Defendant was aware during the course of their representation of Hart that the statute of limitations on the Guarantee claims had run, Defendant breached its fiduciary duty in not informing Hart of that fact.

76.     The foregoing breach of fiduciary duty was continuing for each and every day of Defendant's representation of Hart after its awareness of the malpractice.

77.     In the alternative, to the extent that Defendant failed to advise Hart of its malpractice because it negligently continued to be unaware that the statute of limitations on the Guarantee claims had run, that lack of awareness, in and of itself, constituted a separate act of malpractice.

78.     Hart only learned in April, 2018 that the statute of limitations on her claims against the Guarantee had run.

79.     Had Defendant informed her of its malpractice, Hart would have immediately brought a legal malpractice claim.

80.     Thus, Defendant's failure to disclose its malpractice to Hart has damaged Hart in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Legal Malpractice)

81.     Plaintiff repeats and realleges the facts set forth in Paragraphs 1-80 above as though more fully set forth herein.

82.     On the motion for summary judgment in lieu of complaint in the First Hart Action, Defendant negligently failed to assert the provision of the Guarantees that provided that Hart's books and records would be binding on Guarantors to establish the amount of the Soupman Loan due in an action against Guarantors.

83.     Had Defendant asserted that language, Hart's books and records showing that she had purchased the Soupman Loan, not paid it off, would have been binding upon Guarantors in the First Hart Action.

84.     As such, had Defendant asserted that language, Hart would have been granted summary judgment in the First Hart Action, and would have recovered on the Guarantees in 2010.

85.     Defendant's failure to assert that language was negligent, in that no reasonable attorney, exercising due care and aware of the language of the Guarantees, could have failed to assert that language as a bar to Guarantors' defense that the Soupman Loan had been paid off rather than assigned.

86.     As a result of Defendant's malpractice, Hart has been damaged in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00.


**[remainder of page intentionally left blank]**

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendant in an amount to be proven at trial, but which is reasonably believed to be not less than $3,000,000.00, and for such other and further relief as the Court deems appropriate.

Dated:   July 2, 2018
       New York, New York

                                KAMERMAN UNCYK SONIKER & KLEIN P.C.

                                By:_____ /s/ *Akiva M. Cohen*_____
                                    Akiva M. Cohen
                                    1700 Broadway
                                    42 Floor
                                    New York, New York 10019
                                    (212) 400-4930

                                    *Attorneys for Plaintiff*

## VERIFICATION

### State of New York, County of New York

I, PENNY HART, am the Plaintiff herein. I have read the foregoing complaint and know the contents thereof. The contents thereof are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters he believes them to be true.

_____
PENNY FERN HART

Subscribed and Sworn to
before me on July __2__, 2018

_____
NOTARY PUBLIC

KAREN J. BRESLOW
Notary Public, State of New York
Qualified in Nassau County
No. 02BR6288308
My Commission Expires 09/03/20__